### HARVEY v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 18, 1903.)

#### No. 18.

1. UNITED STATES MAILS—UNLAWFUL USE—DEFENSES—EVIDENCE.

Where, in a prosecution for unlawfully depositing in the United States mails unmailable matter, it was not shown that the box claimed to have been unlawfully mailed had ever been in the post office, either by marks thereon or by evidence of post office employés, and the recipient did not testify that it came to him from the mail, but was careful to say only that he "received it," without stating from whom, the evidence was insufficient to sustain a conviction.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error to review a judgment of the Circuit Court, Southern District of New York, sentencing V. Clementine Harvey, plaintiff in error, to imprisonment upon a verdict of guilty, under section 3893, Rev. St. U. S. [U. S. Comp. St. 1901, p. 2658]. The indictment was for having "unlawfully, willfully, and knowingly deposited, and caused to be deposited, for mailing and delivery, in the post office of the United States, in the city of New York, certain unmailable matter, to wit, articles designed and intended for the prevention of conception and to procure abortion—that is to say, certain pellets inclosed in a pasteboard box."

Henry W. Unger, for plaintiff in error.

Before LACOMBE and COXE, Circuit Judges, and HAZEL, District Judge.

PER CURIAM. The gist of the offense is the misuse of the mails —the mailing or causing to be mailed of letters or packages which are forbidden. It is essential to conviction that it be shown by the proof that the accused did mail or cause to be mailed the offending letter or package. At the close of the government's case, and again at the close of the whole case, the prisoner's counsel moved that the jury be advised to acquit upon the ground that "the government has failed to produce sufficient evidence to establish the charge in the indictment." Exceptions to the denial of these motions sufficiently raise the point on which plaintiff in error relies, viz., that there was not sufficient evidence of mailing to send the case to the jury.

¶ 1. Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.

The entire testimony as to the alleged mailing of the nonmailable box of pills is as follows: A letter purporting to be written by a Mrs. A. Fredericks, dated Summit, N. J., asking for strong medicine for removing pregnancy, and addressed to Dr. Harvey, 144 West Twenty-Third street, New York City, was prepared by Anthony Comstock, a post office inspector, and deposited by him in the post office at Summit, N. J., on June 11, 1902. It was registered, and for the purposes of this discussion it may be conceded that it came into the possession of the prisoner, who is Dr. Harvey's wife. Comstock further testified that on June 13, 1902, at 5:55 p. m., he "received a box of the stronger kind," which was produced, and marked Exhibit No. 3. The witness further testified to a subsequent conversation with the prisoner at the time of her arrest, tending to show an admission that she had received and receipted for the decoy letter sent to Dr. Harvey, but nothing tending in any way to show an admission that she mailed or caused to be mailed the box which Comstock received. With the exception of the wrapper of the box itself, this is absolutely all the testimony on this branch of the case.

The pill box is wrapped in manilla paper, apparently originally tied with a thread, and sealed at each end. It is addressed, by typewriter, "Mrs. A. Frederick, P. O. Box 201, Summit, N. J." On one side is stamped, "Return in 5 days to L. H. R. C. 144 West 23rd St. N. Y." On the face of it is a two cent stamp, upon which some black marks have been impressed, and four or five scattered letters and figures. On the back is partly impressed a black circle, with two letters so faint as to be illegible. On the side there is a black circle, in which are found the words, "N [illegible] K, June 15th, 3.30 P. M., Madison Square." No one was called to give any explanation of the meaning of these various marks, no one to testify that any of them were made by the canceling stamps of a post office, no one familiar with post office methods to testify that the box had ever been in the mails, or even presented indications of having been marked by post office employés. Comstock did not testify that it came to him from the mail; he is careful to say only that he "received it"—from whom or in what way he does not state. Moreover, the only legible date on the wrapper is "June 15, 3.30 P. M."; but Comstock testified that he received it on "June 13th, at 5:55 p. m." If Comstock's testimony is accurate, the natural inference is either that the only legible inscription (aside from the address and return request) was not affixed by the post office employés, since the box was then in his possession; or, if it be assumed that the inscription was affixed by the post office, then that Comstock mailed or caused it to be mailed after he "received" it, on June 13th.

But all such inferences and assumptions are idle. There should be some affirmative evidence to show that the package was at one time in the mails, and this record is wholly barren of any such evidence.

The judgment of conviction must be reversed.